Lakbok, P. J.
The main question presented by this appeal is whether the final accounts of Joseph Hicks, one of the executors of the last will and testament of his father^ Wiliam Hicks, should be surcharged with the sum of $8,592 or $7,160 or any less sum.
Joseph Hicks does not deny receiving from the testator the sum of $7,160 or its equivalent, but alleges that his father gave him this sum as an advancement upon his agreement to pay to him the interest upon it during his father’s life in monthly payments of $35.80, which payments he thereafter made, except as to certain months, the indebtedness for which he admits.
This claim of Joseph Hicks is sustained by the decree of the surrogate. The case is one of fact, and upon the testimony and the report of the referee the decree in this respect should be affirmed, unless it ought to have been found that at the time of the alleged advancement or gift, William Hicks was of unsound mind.
Much testimony was given bearing upon that issue. The alleged advancement to Joseph was made on or prior to May £3, 1882. A committee of the person and estate of the testator was duly appointed in November, 1882, upon an inquisition of a jury dated October, 21, 1882. This inquisition declared that “William Hicks, at the time of taking this inquisition is a lunatic and of unsound mind, * * * and that he has been in the same state of lunacy for the space of about three months last past.”
On the 23d day of May, 1882, William Hicks and Joseph Hicks went together to the office of Mr. Haynor, a lawyer, and requested him to draw an agreement between them wherein the advancement bjr the father to the son of $7,160 should be recited, and that in consideration thereof the son should pay the father $35.80 per.month during the father’s natural life. There is no doubt that the testator explicitly declared to Mr. Haynor that he had given Joseph this sum, and that for his part he did not wish any agreement, but Joseph did.
It seems to us that the testimony of Mr. Haynor settles the issue upon the alleged gift and advanceihent in favor of Joseph Hicks, and that it tends strongly to show that the testator was at that time of sound mind and free from restraint. To discuss the entire testimony upon this issue would be but to recast the briefs of counsel. The finding of the referee that he was then of sound mind is a satisfactory deduction from all the testimony.
The appellants allege error in that they submitted to the referee requests to find, which he disregarded, and made no response to any of them.
No doubt it was the duty of the referee to respond to these. *324 requests. Code Civil Procedure, §§ 2546, 1023, 993. If this error prejudiced the appellants, the judgment should be reversed. But it did not. The proper responses to the requests would not have aided the appellants.
Haynor was an attorney-at-law, and the testator and his son, Joseph Hicks, together, went to him and stated the facts which they requested him to embody in an agreement. The communications so made were not privileged. Haynor is a competent witness to testify to them. He only discloses, by his testimony, the statements which each party openly made to the other. No suggestion of the betrayal of private confidence can be made. Hebbard v. Haughian, 70 N. Y., 55; Sherman v. Scott, 27 Hun, 334; Whiting v. Barney, 30 N. Y., 330.
The testimony tended to show that the testator discharged a mortgage which he held against the property of Joseph Hicks. The amount secured by his mortgage formed the larger part of the sum in controversy here. The subsequent declarations of the testator, that he had given Joseph the amount, were competent to characterize the transaction. Doty v. Willson, 47 N. Y , 583: Gray v. Barton, 55 id., 68.
The fact that Joseph agreed to pay to his father interest upon the gift at the rate of $35.80 per month, does not invalidate it as a gift. Doty v. Willson (supra).
It was plainly competent for him to part with his money upon such terms as both parties agreed to, and it was immaterial by what name the transaction is called. Say that he purchased an income in the nature of an annuity, payable in monthly installments, and it is equally valid as a defense.
The surrogate properly construed the fifth clause of the testator’s will.
The fifth clause reads, “ I give and bequeath to all my grand children and great-grand children that may be living at the time of my decease, and to Alvah Seaman, the stepdaughter of my son William, if living at the time of my decease, all the rest, residue and remainder of my estate, to be divided equally between them, share and share alike, except, that in the division, I give and bequeath to my grand daughter, Grace Hicks, daughter of my son John, three extra shares of said residue and remainder of my-estate.”
Including Alvah Seaman and Grace Hicks, there were twenty-six members of the above class living at' the testator’s death. The surrogate construed this clause as if the testator had said: “ Divide my residuary estate into as many shares as there áre legatees, plus 3, and give Grace four of such shares, and each of the other legatees one share.”
The propriety of this division does not appear to be debatable.
No other points are urged by the appellants which it is necessary to discuss.
*325 The decree should be affirmed, with costs against the appellants; the costs may be charged, ratably, against the shares. The special guardian, however, may first have costs of this appeal out of the entire fund.
Order to be settled by Landon, P. J.
Fish and Pajrker, JJ., concur.